## Monsarratt *v.* Trust Company.

*Pleading—Statement defective for ambiguity.*

Modern practice does not require the skill and technical nicety of the special pleader; but concession of latitude in matters of form does not make permissible contradiction and ambiguity in matters of substance.

*Principal and surety—Liability of surety.*

In a suit on a surety bond, given to plaintiff, his successors and assigns to recover for the use of certain locomotives, it is no defense to set up a sale of the locomotives by plaintiff as working a release of the surety.

Argued May 8, 1900. Appeal, No. 207, April T., 1900, by defendant, in suit of N. Monsarratt, receiver of the Columbus, Hocking Valley & Toledo Railroad Company, against the Equitable Trust Company, from judgment of C. P. No. 2, Allegheny Co., Oct. T., 1899, No. 365, in favor of plaintiff for want of a sufficient affidavit of defense. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by W. W. PORTER, J.

Rule for judgment for want of a sufficient affidavit of defense Before SHAFER, J.

The facts sufficiently appear in the opinion of the court.

Judgment for plaintiff for want of a sufficient affidavit of defense for $1,416.39. Defendant appealed.

*Error assigned* was in making absolute rule for judgment for want of a sufficient affidavit of defense.

*Wm. M. Hall, Jr.*, for appellant.—A surety cannot be held liable beyond the terms of his obligation: Commonwealth v. Simonton, 1 Watts, 310; Bank v. Barrington, 2 P. & W. 27.

If the creditor has disabled himself to proceed the surety is ipso facto discharged. This is just what happened: United States v. Simpson, 3 P. & W. 437.

Nothing can be clearer, both upon principle and authority, than the doctrine that the lialibity of a surety is not to be extended by implication beyond the terms of his contract: United States v. Boecker, 88 U. S. 652; Miller v. Steward, 22 U. S. 680, 702.

We submit that this guaranty was a personal one, inuring only to the benefit of the receiver. The guaranty was for the performance of a certain agreement.

In any event the receiver cannot recover the money due the company. It is not alleged that there has been an assignment of the bond or agreement, nor is the suit brought in the name of the company.

*E. Y. Breck*, for appellee.

OPINION BY WILLIAM W. PORTER, July 26, 1900:

This suit is brought by "N. Monsarratt, Receiver of the Columbus, Hocking Valley and Toledo Railway Company," upon a surety bond which was given by the defendant company to secure the performance of the covenants of an agreement by certain parties with the receiver for the use of two locomotives. The claim is for the amount of the rentals unpaid by the principals, under the agreement. Judgment has been entered for want of sufficient affidavit of defense.

To the first statement filed, an affidavit of defense was presented. We are furnished with no copy of the statement. The affidavit recites that, "it appearing by the statement of

claim that the plaintiff surrendered possession of the said loco-
motives on the first day of March, 1899, and thereafter exer-
cised no control or ownership over the same," the surety was
released. Thereupon, the plaintiff filed an amended state-
ment. Therein, he recites that he entered upon his duties as
receiver and continued to perform them until March 1, 1899;
that the Hocking Valley Railway Company took title and pos-
session of the property theretofore under his control, "except
the two locomotives hereinafter referred to." He avers that
he "has not yet been discharged from his office as receiver, or
his accounts closed, and he is yet held accountable for the
sums claimed." Up to this point the statement seems to aver
that no sale was made of the locomotives to the Hocking
Valley Railway Company. In the sixth paragraph of the state-
ment, the plaintiff avers that the principals in the bond, "after
the termination of the receivership of the plaintiff, as stated
in the first paragraph of this statement," kept possession of
the locomotives and became indebted to the plaintiff "for the
use of the Hocking Valley Railway Company in the sum of
$270, for their use until the month of March, 1899," and
for April and May, 1899, making a total of $803.15, which the
principals have failed to pay to the plaintiff. Thus, it would
seem that there had been a sale to the railway company for
whose use the suit is brought as to a part of the claim. Later,
in the same paragraph, the allegation is made that on April 25,
1899, notice was given to the defendant company to return
the locomotives and to pay the rent due by the principals; and
that "thereupon the defendant took possession of the two
locomotives mentioned in the contract, and shipped them from
Youngstown, Ohio, to M. S. Connors, the plaintiff's superin-
tendent and agent at Marion, Ohio."

To the amended statement an additional affidavit of defense
was filed, in which it is alleged that on March 1, 1899, the
plaintiff surrendered possession and title and gave up all con-
trol of the two locomotives in question to the Hocking Valley
Railway Company; and that thereafter the plaintiff had no
control over the same, right of possession or title thereto; that
the demands made concerning these locomotives upon the de-
fendant were made by the Hocking Valley Railway Company,
and not by the plaintiff; and that bills were rendered by the

said railway company, and not by the said plaintiff.    There is, however, no denial of the allegation of the statement that in point of fact the two locomotives were delivered by the defendant company to the plaintiff, pursuant to a demand upon the defendant company to make such return.    We cannot withhold adverse comment upon the statement.    Modern practice does not require the skill and technical nicety of the special pleader.    But concession of latitude in matters of form does not make permissible contradiction and ambiguity in matters of substance.    It may be that to such a statement as that before us, the defendant would not be under compulsion to reply by affidavit.    Having, however, put upon the record affidavits which purport to contain a defense upon the merits, we proceed to a consideration of the propriety of the judgment entered by the court below.    It is impossible, as we have seen, to determine from the amended statement of claim whether the plaintiff means to say that the two locomotives passed, by foreclosure sale, to the Hocking Valley Railway Company, on March 1, 1899, or not.    The affidavits of defense allege distinctly that the locomotives were sold.    The plaintiff, however, says that he " has not yet been discharged from his office as receiver, or his accounts closed, and he is yet held accountable for the sums claimed."    This is undenied by the affidavits.    The conclusion to be drawn from the two papers is that the locomotives were sold and that, by the terms of the sale, the plaintiff remained charged with the duties of recovering and delivering possession and recovering the rents accrued and to accrue.

If this be the character of the transaction, the defense set up, that the change of ownership in the locomotives worked a release of the surety on the bond, will not stand.    In no way was the surety injured.    The option reserved to the plaintiff in the agreement of letting, to require the return of the locomotives at any time, was a provision for his convenience.    Furthermore, if the sale was as stated above, the plaintiff did not lose his right to require the return of the locomotives to him under the agreement ; and the allegation of the statement is not denied in the affidavits, that possession of them was in fact restored to the plaintiff by the defendant.

If the plaintiff chooses to set forth in his statement that, as

to part of the sum claimed, he sues for the use of his vendee, he may do so without losing his rights on the surety bond. The stipulations in the bond contemplate a possible sale of the locomotives; a transfer of the agreement of lease; and of the bond itself. The bond is not to the obligee only, but also to his "successors and assigns." A "surety is not liable further than the true intention and meaning of the parties expressed in the instrument and the legal construction of the words used, make him liable; but so far he is liable, and the legal construction of the words make him answerable:" Roth v. Miller, 15 S. & R. 100.

The affidavit alleges, as an independant matter of defense, that the plaintiff negligently permitted the lessees of the locomotives to default in their rent; that he made no attempt to collect the rent; that he did not notify the defendant of default; and did not exercise the option to terminate the agreement. This is not a good defense. Long ago, it was said by Mr. Chief Justice TILGHMAN, that, "it is the business of the surety to look to the principal, and if he think himself in danger, to apply to the creditor and insist on his taking measures for the recovery of the debt. But without such demand by the surety, he has no equity against the creditor. The surety may have recourse to equity to compel the creditor to bring suit against the principal. Therefore, when a creditor makes an agreement by which he disables himself from bringing suit, without the consent of the surety, he acts against equity, and ought not to hold the surety responsible. But nothing short of an agreement by which his hands are tied and a suit prevented, can discharge a surety:" Cope v. Smith, 8 S. & R. 110. Mere forbearance, however prejudicial, will not discharge: U. S. v. Simpson, 3 P. & W. 437; Kramph v. Hatz, 52 Pa. 525; Zane v. Kennedy, 73 Pa. 182; DeColyar on Guaranties, 407. The allegations of the affidavits do not take the present case out of the operation of this rule of law.

We are of opinion that the judgment for the plaintiff must stand.

Judgment affirmed.